

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SABER AHMED, et al.,                    )    Case No. ED CV 15-2057 FMO (SPx)
                                        )
                  Plaintiffs,           )
                                        )    **ORDER RE: MOTION FOR PRELIMINARY**
        v.                              )    **APPROVAL OF CLASS SETTLEMENT**
                                        )    **AND CERTIFICATION OF SETTLEMENT**
HSBC BANK USA, et al.,                  )    **CLASS**
                                        )
                  Defendants.           )
_____      )

        Having reviewed and considered all the briefing filed with respect to Plaintiffs' Motion for

Preliminary Approval of Class Action Settlement and Certification of Settlement Class (Dkt. 181,

"Motion") and the oral argument presented at the hearing on February 21, 2019, the court

concludes as follows.

                                    **BACKGROUND**

        On October 6, 2015, Saber Ahmed ("Ahmed") filed this action on behalf of himself and all

others similarly situated against HSBC Bank USA, National Association ("HSBC"), asserting claims

for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (See Dkt.

1, Complaint).          On May 15, 2017, Ahmed, joined by plaintiff John Monteleone ("Monteleone")

(collectively, "plaintiffs"), filed the operative First Amended Complaint (Dkt. 27, "FAC"), alleging

that HSBC and PHH Mortgage Corporation ("PHH") (collectively, "defendants") negligently and

willfully violated the TCPA by using an "automatic telephone dialing system" ("ATDS") within the

meaning of 47 U.S.C. § 227(a)(1) to call plaintiffs, and others similarly situated, on their cell

phones.  (See Dkt. 27, FAC at ¶¶ 65-73).  Plaintiffs seek statutory damages, injunctive relief, and

1  "such other and further relief as the Court deems necessary, just, and proper." (Id. at pp. 19-20,

2  Prayer for Relief).

3      After engaging in discovery, motion practice, and an all-day mediation session, the parties

4  reached a settlement in July 2018.   (See Dkt. 173, Joint Stipulation for Settlement; Dkt. 181-2,

5  Declaration of Abbas Kazerounian ("Kazerounian Decl.") at ¶¶ 9-10 & 12-14).   Plaintiffs filed the

6  instant Motion, seeking an order: (1) provisionally certifying a nationwide class for settlement

7  purposes; (2) preliminarily approving the settlement; (3) directing dissemination of class notice;

8  (4) appointing plaintiffs as class representatives; (5) appointing plaintiffs' counsel as class counsel;

9  (6) appointing JND Legal Administration Company ("JND") as settlement administrator; and (7)

10  scheduling a final approval hearing.   (See Dkt. 181-1, Memorandum in Support of Motion []

11  ("Memo") at 4, 26).

12      The parties have defined the settlement class as "[a]ll persons within the United States to

13  whom (a) Defendant HSBC or Defendant PHH Mortgage, (b) placed a call (c) to a cellular

14  telephone (d) regarding a mortgage loan owned and/or serviced by, on behalf of and/or in the

15  name of HSBC (e) through the use of any dialing system or an artificial or prerecorded voice (f)

16  between October 6, 2011 and [the date Plaintiffs move for Preliminary Approval]." (Dkt. 181-3,

17  Settlement Agreement and Release ("Settlement Agreement") at § 3.1).

18      The relief available to the class will come from a non-reversionary $2,400,000 settlement

19  fund, after deductions for attorney's fees and costs, the class representative service awards, and

20  costs for the administration of the settlement. (See Dkt. 181-3, Settlement Agreement at §§ 2.35

21  & 4.2; Dkt. 181-1, Memo at 4-5).   Subject to the court approval, the settlement provides for up to

22  $600,000 (or 25% of the gross settlement amount) in attorney's fees, and costs and expenses not

23  to exceed $55,000.   (See Dkt. 181-3, Settlement Agreement at § 15.1; Dkt. 181-1, Memo at 9).

24  In addition, the motion will seek up to $5,000 in an incentive award for each of the two named

25  plaintiffs.   (See Dkt. 181-3, Settlement Agreement at § 15.2).

26      Payment from the settlement fund will be paid on a pro rata basis to class members who

27  submit timely claim forms.   (See Dkt. 181-3, Settlement Agreement at §§ 2.5, 4.2.4, 6.1.3, 7.1-7.2;

28  Dkt. 185, [Supplemental] Declaration of Todd M. Friedman ("Supplemental Friedman Decl."),

Exhibit ("Exh.") A, "Settlement Claim Form" & Exh. D, "Electronic Claim Form").  The payment to each class member who submits a timely and valid claim form, (see id. at §§ 2.2 & 2.11.5), will be calculated by dividing the amount remaining in the fund after deducting all settlement costs, including attorney's fees, litigation costs, notice and administration expenses, and class representative awards, by the total number of valid claims.  (See id. at §§ 4.2.4 & 4.2.5).  Plaintiffs "estimate that the individual Settlement Class Members award will be approximately $60.00 per claim based on an anticipated claims rate of 15%."  (Dkt. 181-1, Motion at 15).  The settlement fund is non-reversionary and any checks that remain uncashed more than 180 days will be redistributed on a pro rata basis to the eligible settlement class members if, after administration, the redistribution is economically feasible. (See Dkt. 181-3, Settlement Agreement at § 4.2.7).  If redistribution is not economically feasible, the remaining amounts shall be distributed to a proposed cy pres beneficiary, Public Counsel.  (See id. at § 4.2.7).

## LEGAL STANDARD

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

I.    CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision as to the appropriateness of class certification."[1] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (internal citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  "A court considering such a request should give the Rule 23 certification factors 'undiluted, even

_____

[1]  All "Rule" references are to the Federal Rules of Civil Procedure.

3

heightened, attention in the settlement context.'" Sandoval, 2011 WL 5443777, at *2 (quoting Amchem, 521 U.S. at 620, 117 S.Ct. at 2248). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011). Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy. The matters pertinent to these findings include:

>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

The party seeking class certification bears the burden of demonstrating that the proposed class meets the requirements of Rule 23. See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.") (emphasis original).  However, courts need not consider the Rule 23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for a manageable trial.  See Morey v. Louis Vuitton N. Am., Inc., 2014 WL 109194, *12 (S.D. Cal. 2014) ("[B]ecause this certification of the Class is in connection with the Settlement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement."); Rosenburg v. I.B.M., 2007 WL 128232, *3 (N.D. Cal. 2007) (discussing "the elimination of the need, on account of the Settlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification").

II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Justice v. Civil Service Comm'n of the City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  Accordingly, a district court

must determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959; see Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks and citation omitted).

"If the [settlement] proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). As the Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

Approval of a class action settlement requires a two-step process – a preliminary approval followed by a later final approval. See Tijero v. Aaron Bros., Inc., 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); West v. Circle K Stores, Inc., 2006 WL 1652598, *2 (E.D. Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money and resources involved in, for example, sending out new class notices – should be good enough for final approval." Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016). "At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed,

non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Id. (internal quotation marks omitted); see Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted).

## DISCUSSION

I.      CLASS CERTIFICATION.

      A.      Rule 23(a) Requirements.

            1.      **Numerosity**.

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1).  Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers."  See Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement.").

Here, the members of the class are so numerous that joinder of all members is impracticable.  According to the parties, there are approximately 161,325 unique mortgage accounts that were called, (see Dkt. 181-2, Kazerounian Decl. at ¶ 18; Dkt. 181-1, Memo at 19), indicating that there are thousands of class members.

2.    **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted). "The plaintiff[s] must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). See Hanlon, 150 F.3d at 1019; Mazza, 666 F.3d at 589. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

Here, the case involves common class-wide issues that are apt to drive the resolution of plaintiffs' claims. The common questions include whether PHH, acting as an agent of HSBC, or HSBC itself, used an ATDS in calling the cellular telephones of class members; whether defendants had "prior express consent" for the phone calls; whether defendants violated the TCPA; and whether they did so willfully or knowingly. (See Dkt. 27, FAC at ¶¶ 16 & 39; Dkt. 181-1, Memo at 20); see, e.g., Robinson v. Paramount Equity Mortgage, LLC, 2017 WL 117941, *4 (E.D. Cal. 2017) (common questions of fact or law include "whether Defendant used an auto-

dialer" to make calls without "written consent;" "whether Defendant's conduct violated the TCPA;" and "whether Defendant acted willfully"); Stemple v. QC Holdings, Inc., 2016 WL 4059345, *5 (S.D. Cal. 2016) (common questions of fact or law include whether defendant used an ATDS and whether defendant made calls in violation of the TCPA); Malta v. Fed. Home Loan Mortgage Corp., 2013 WL 444619, *2 (S.D. Cal. 2013) ("There are . . . several common questions of law, including: (1) whether [defendant] negligently violated the TCPA; (2) whether [defendant] willfully or knowingly violated the TCPA; and (3) whether [defendant] had 'prior express consent' for the calls).

### 3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). To demonstrate typicality, plaintiffs' claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, the claims of the representative plaintiffs are typical of the claims of the class. Plaintiffs' claims arise from the same nucleus of facts as the class – calls were made to their cell phones allegedly via an ATDS – and are based on the same legal theory, i.e., the calls allegedly violated the TCPA. (See Dkt. 27, FAC at ¶¶ 23-52, 57-59, 65-73; Dkt. 181-1, Memo at 20-21); see, e.g., Malta, 2013 WL 444619, at *3 (finding plaintiffs' claims typical of the class in part because their claims were "based on the same legal theory as that applicable to the class: that the calls violated the TCPA"). Additionally, the court is not aware of any facts that would subject the class representative "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

4.    **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

Here, the proposed class representatives do not appear to have any conflicts of interest with the absent class members.  Each plaintiff states that he has "no conflict with the other settlement class members, [his] co-plaintiff, with [his] attorneys in this case, or the proposed contingent cy pres recipient, Public Counsel." (Dkt. 181-12, Declaration of Saber Ahmed in Support of Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Ahmed Decl.") at ¶ 18; Dkt. 181-13, Declaration of John Monteleone in Support of Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Monteleone Decl.") at ¶ 18 (some punctuation altered)).  In addition, each named plaintiff states that he understands the "the obligations of serving as class representative, [has], and will adequately represent the interests of the settlement class members[.]" (Dkt. 181-12, Ahmed Decl. at ¶ 8; Dkt. 181-13, Monteleone Decl. at  ¶ 8).  Finally, none of the class representatives have individual claims separate from the class claims.  (See, generally, Dkt. 27, FAC).  Under the circumstances, "[t]he adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members[.]  Further, there is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class." Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013).

The court is satisfied that plaintiffs' counsel are competent and willing to prosecute this action vigorously.  Plaintiffs' counsel request, and the Settlement Agreement provides, that the

court appoint as class counsel Alexander H. Burke of Burke Law Offices, LLC; Beth E. Terrell of Terrell Marshall Law Group PLLC; Matthew R. Mendelsohn of Mazie Slater Katz & Freeman, LLC; Joshua B. Swigart of Hyde & Swigart; Todd M. Friedman and Adrian Bacon of The Law Offices of Todd M. Friedman, P.C.; and Abbas Kazerounian of Kazerouni Law Group, APC. (See Dkt. 181-3, Settlement Agreement at § 2.7; Dkt. 181-7, Declaration of Joshua B. Swigart ("Swigart Decl.") at ¶¶ 6 & 11; Dkt. 181-11, Declaration of Todd M. Friedman ("Friedman Decl.") at ¶ 4). Joshua B. Swigart states that "[s]ince [his] admission to the California bar in 2003, [he has] been engaged exclusively in the area of consumer rights litigation," including class action litigation under the TCPA, and that his firm "has extensive experience in consumer class actions and other complex litigation, including the TCPA." (Dkt. 181-7, Swigart Decl. at ¶¶ 12 & 13). Alexander H. Burke states that since 2008, his firm, Burke Law Offices, LLC, has "concentrate[d] on consumer class action and consumer work on the plaintiff side[,]" and "focused on prosecuting cases pursuant to the [TCPA.]" (Dkt. 181-8, Declaration of Alexander H. Burke ("Burke Decl.") at ¶ 2). Similarly, Beth E. Terrell states that "[a] substantial part of [her firm's] practice involves class actions brought on behalf of consumers whose rights have been violated[,] [including] consumer class actions involving the [TCPA]" and that she has "played a leadership role in numerous complex cases where the court has appointed counsel[.]" (Dkt. 181-9, Declaration of Beth E. Terrell ("Terrell Decl.") at ¶¶ 2-3). Matthew R. Mendelsohn states that his practice "focuses solely on various types of complex litigation on behalf of plaintiffs" and that his firm "has extensive experience in complex civil litigation, in general, and class actions and consolidated proceedings specifically." (Dkt. 181-10, Declaration of Matthew R. Mendelsohn ("Mendelsohn Decl.") at ¶¶ 6-7). Todd Friedman states that he has "extensive experience prosecuting cases related to consumer issues" and that his firm "has litigated over 1000 individual based consumer cases and litigated over 60 consumer class actions." (Dkt. 181-11, Friedman Decl. at ¶ 7). According to Friedman, "[a]pproximately 100% percent [sic] of [his] practice concerns consumer litigation in general, with approximately 90% of [his] class action experience involving consumer protection." (Id.; see also id. at ¶¶ 10-12) (listing consumer cases). Based on counsel's representations, and having observed their diligence in litigating this case, the court finds that plaintiffs' counsel are

1   competent, and that the adequacy of representation requirement is satisfied.  See Barbosa, 297

2   F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds

3   that Plaintiffs are represented by experienced and competent counsel who have litigated

4   numerous class action cases.").

5   In short, the court sees no signs of an "improper conflict of interest . . . which would deny

6   absent class members adequate representation."  Hanlon, 150 F.3d at 1021.

7   **B.**   Rule 23(b) Requirements.

8   Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

9   be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal

10  quotation marks omitted).  The rule requires two different inquiries, specifically a determination as

11  to whether (1) "questions of law or fact common to class members predominate over any

12  questions affecting only individual members[;]" and (2) "a class action is superior to other available

13  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see

14  Spann, 314 F.R.D. at 321-22.

15  **1.**   **Predominance**.

16  "The Rule 23(b)(3) predominance inquiry tests whether [the] proposed classes are

17  sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623, 117

18  S.Ct. at 2249.  "Rule 23(b)(3) focuses on the relationship between the common and individual

19  issues.  When common questions present a significant aspect of the case and they can be

20  resolved for all members of the class in a single adjudication, there is clear justification for

21  handling the dispute on a representative rather than on an individual basis."  Hanlon, 150 F.3d at

22  1022 (internal quotation marks and citations omitted); see In re Wells Fargo Home Mortg.

23  Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance

24  inquiry . . . [is] the balance between individual and common issues.").  Additionally, the class

25  damages must be sufficiently traceable to plaintiff's liability case.  See Comcast Corp. v. Behrend,

26  569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

27  Here, the court is persuaded that "[a] common nucleus of facts and potential legal remedies

28  dominates this litigation."  Hanlon, 150 F.3d at 1022.  Common questions predominate over

individual questions, including whether defendants violated the TCPA by making calls to class members using an ATDS, and whether HSBC is vicariously liable for the calls placed by PHH. (See Dkt. 181-1, Memo at 22-23); see, e.g., Robinson, 2017 WL 117941, at *6 ("[T]he common questions discussed in conjunction with Rule 23(a)(2) also predominate over any individual issues."); Malta, 2013 WL 444619, at *4 ("The central inquiry is whether [defendant] violated the TCPA by making calls to the class members.  Accordingly, the predominance requirement is met.").  Additionally, the relief sought applies to all class members and is traceable to plaintiffs' liability case.  See Comcast, 133 S.Ct. at 1433.  In short, there are several common questions that predominate over all others in this litigation.  See Tyson Foods, Inc. v. Bouaphakeo, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks omitted).

        2.   **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiffs do not assert any claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 27, FAC).  The alternative method of resolution – pursuing individual claims for a relatively modest amount of damages  – would likely never be

brought, as "litigation costs would dwarf potential recovery." <u>Hanlon</u>, 150 F.3d at 1023; <u>see</u> <u>Leyva</u> <u>v. Medline Indus., Inc.</u>, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication."); <u>Bruno v. Quten Research Inst., LLC</u>, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action.").  In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." <u>Munoz v. PHH Corp.</u>, 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own case may opt out of the class, <u>see</u> Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation." 2 <u>Newberg on Class Actions</u>, § 4:70 at p. 277 (emphasis omitted).  Here, there is no indication that any class member is involved in any other litigation concerning the claims in this case.  (<u>See</u>, <u>generally</u>, Dkt. 181-1, Memo).

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant." <u>Barbosa</u>, 297 F.R.D. at 444; <u>see</u> <u>Amchem</u>, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (citation omitted).

The only factor in play here weighs in favor of class treatment.  Further, the filing of separate suits by several thousand class members "would create an unnecessary burden on judicial resources." <u>Barbosa</u>, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.

II.   FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.

A.   The Settlement is the Product of Arm's-Length Negotiations.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id. (internal quotation marks omitted).  When the settlement is "the product of an arms-length, non-collusive, negotiated resolution[,]" id., courts afford the parties the presumption that the settlement is fair and reasonable.  See Spann, 314 F.R.D. at 324 ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (internal citation omitted); In re Netflix Privacy Litig., 2013 WL 1120801, *4 (N.D. Cal. 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive arms' length negotiations conducted by capable and experienced counsel.").

Here, plaintiffs engaged in "extensive discovery," including "serv[ing] Defendants with nearly a dozen sets of written discovery . . . [and obtaining from Defendants] documents exceeding 80,000 pages.  Plaintiffs also deposed Defendants' representatives[.]" (Dkt. 181-9, Terrell Decl. at ¶ 7).  In addition, the parties engaged in "multiple, lengthy hearings to address the Parties' ongoing discovery disputes[,]" (id. at ¶ 8), and substantial motion practice, (id. at ¶ 9), including multiple motions to strike and a motion for reconsideration. (See id.).  The parties also participated in two all-day mediation sessions with a private mediator, the Hon. Jay C. Gandhi (Ret.).  (See Dkt. 181-2, Kazerounian Decl. at ¶¶ 9-10; Dkt. 181-8, Burke Decl. at ¶ 13; Dkt. 181-3, Settlement Agreement at §§ 1.6-1.7).

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions.  The parties

15

had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (quoting Officers for Justice, 688 F.2d at 625).

        B.     The Amount Offered In Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members.

            1.    **Recovery for Class Members.**

As described above, the settlement class members will share in a settlement fund of $2,400,000.  After deducting amounts for claims administration ($210,000), and assuming the court awards the full amount requested for attorney's fees ($600,000), costs ($55,000), and an incentive award to plaintiffs ($10,000), plaintiff estimates that approximately $1,530,000[2] would remain in the settlement fund for distribution to class members.  (See Dkt. 181-1, Memo at 1-2).  According to plaintiff, if 15% of the identified class members submit a claim form, each would received approximately $60.00.  (See id. at 2).

The settlement here is reasonable given the substantial litigation risks in this case.  For instance, plaintiffs risked not prevailing on a motion for class certification, particularly in light of defendants' argument that whether individuals consented to the calls is an individualized issue that precludes class certification.  (See Dkt. 181-1, Memo at 11-12).  In addition, as plaintiffs point out, "courts are divided as to the meaning of an ATDS[,]" and there was a risk that the court would have found that the system used to call plaintiffs was not an ATDS within the meaning of the TCPA.  (See Dkt. 181-1, Memo at 13) (collecting cases).  Moreover, plaintiffs recognize the costs of continued litigation "would be expensive and time-consuming."  (See id. at 13-14).  They also note that, even if they prevailed, the damages available would be so significant as to make it impossible for defendants to satisfy the judgment.  (See id. at 13-14).  In short, the risks of continued litigation are significant, and the court takes these real risks into account.  Weighed

---

      [2]  By the court's calculation, the amount remaining given these estimates would be approximately $1,525,000.

against those risks, and coupled with the costs and delays associated with continued litigation, the settlement's benefits to the class fall within the range of reasonableness.  See Malta, 2013 WL 444619, at *8 ("The settlement award that each class member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation[.]"); see, e.g., Bellows v. NCO Fin. Sys., Inc., 2008 WL 4155361, *3 (S.D. Cal. 2008) ("each Class Member who makes a timely and accepted claim shall be entitled to receive a $70 settlement check"); Sarabri v. Weltman, Weinberg & Reis Co., L.P.A., 2012 WL 3991734, *8 (S.D. Cal.), report and recommendation adopted, 2012 WL 3809123 (S.D. Cal. 2012) (preliminarily approving settlement that provided class members with a potential settlement check of $70); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

       2.   **Release of Claims**.

The court also considers whether a class action settlement contains an overly broad release of liability.  See Newberg on Class Actions § 13:15 (5th ed. 2014) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Computer Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis," without the establishment of a settlement fund or any other benefit to the class).

Here, plaintiffs and class members who do not exclude themselves from the settlement will release defendants from all claims "that relate to or arise out of the Released Parties' use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone for mortgage servicing or debt collection purposes during the Settlement Class Period, including but not limited to claims that relate to or arise out of the Released Parties' use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' as defined in the Telephone Consumer

Protection Act, 47 U.S.C. § 227, et seq. and any other statutory or common law claim arising from the use of a telephone dialing system or artificial or prerecorded calls to cellular telephones[.]" (Dkt. 181-3, Settlement Agreement at § 10.1).  The Release does not include claims based on other aspects of the telephone calls, such as the substance of the calls or the time/date of any such calls; the Release applies only to claims relating to or arising out of the equipment or method used for such calls.  (See id.).  The Release also contains a limited waiver of rights under California Civil Code § 1542 ("§ 1542"); it is "expressly limited to claims that relate to or arise out of Release Parties' use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone for mortgage servicing or debt collection purposes during the Settlement Class Period, including but not limited to claims that relate to or arise out of Released Parties' use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' as defined in the [TCPA] or a similar state or common law[,] . . . but do not include claims based on other aspects of calls, such as the substance of the calls or the time/date of any such calls." (Id. at § 10.3).  With the understanding that, under the Release, the settlement class members are not giving up claims unrelated to those asserted in this action, the court finds that the Release adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality.  See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C.   The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representatives.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).  The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id.  The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165.  "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has

taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Settlement Agreement provides that class counsel shall petition the court for an incentive award for the class representatives of up to $5,000 each for their service as class representatives. (Dkt. 181-3, Settlement Agreement at § 15.2). It further provides that "Court approval of any Incentive Award will not be a condition of the Settlement." (Id.).

Here, it is clear that the settlement does not improperly grant preferential treatment to the class representatives. As an initial matter, the $5,000 incentive award to each named plaintiff is presumptively reasonable. See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable). Moreover, because the parties agree that the Settlement Agreement shall remain in force regardless of any incentive award, the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent class members. Further, the record reflects that plaintiffs have taken on responsibility in litigating this case, including by sitting for deposition, and the class has benefitted from their efforts. (See Dkt. 181-2, Ahmed Decl. at ¶ 9; Dkt. 181-13, Monteleone Decl. at ¶ 9). While a disparity may exist between the award plaintiffs receive and the potential monetary awards to absent class members, the court does not believe, under the circumstances here, that such disparity rises to the level of unduly preferential treatment. On the contrary, the additional payment – with the request amounting to less than one percent of the settlement fund – is warranted given the substantial efforts plaintiffs have undertaken on behalf of the class. (See Dkt. 181-2, Ahmed Decl. at ¶ 9; Dkt. 181-13, Monteleone Decl. at ¶ 9). In short, because the parties agree that the settlement shall remain in force regardless of any incentive award and the amount of the award is presumptively reasonable, the court is persuaded that there is no conflict of interest between the named plaintiffs and absent class members. See, e.g., In re Online DVD-Rental, 779 F.3d at 947-48 (upholding reasonableness of $5,000 incentive awards that were roughly 417 times larger than $12 individual awards because the number of representatives was relatively small, and the total amount of incentive awards "ma[d]e up a mere .17% of the total settlement fund").

1          D.     Class Notice and Notification Procedures.

2          Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner

3   to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Federal

4   Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the

5   circumstances, including individual notice" of particular information.  See Fed. R. Civ. P.

6   23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

7          A class action settlement notice "is satisfactory if it generally describes the terms of the

8   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

9   forward and be heard."  Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004)

10  (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a

11  class action under either the Due Process Clause or the Federal Rules is measured by

12  reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low

13  v. Trump University, LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we

14  measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal

15  quotation marks omitted).  Settlement notices "are sufficient if they inform the class members of

16  the nature of the pending action, the general terms of the settlement, that complete and detailed

17  information is available from the court files, and that any class member may appear and be heard

18  at the hearing[.]"  Gooch v. Life Inv'rs Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (internal

19  quotation marks omitted); see Wershba v. Apple Comput., Inc., 91 Cal.App.4th 224, 252 (2001),

20  disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc., 4 Cal.5th 260, 269

21  (2018) ("As a general rule, class notice must strike a balance between thoroughness and the need

22  to avoid unduly complicating the content of the notice and confusing class members.").  The notice

23  should provide sufficient information to allow class members to decide whether they should accept

24  the benefits of the settlement, opt out and pursue their own remedies, or object to its terms.  See

25  In re Integra Realty Resources, Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the

26  settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms

27  of the proposed settlement and of their options.").

28         Here, the parties have selected, subject to court approval, JND as the Claims Administrator.

(See Dkt. 181-3, Settlement Agreement at § 5.1).  The notice program will consist of: (1) individual notice to known class members in the form of direct mail and/or email notice ("Mail Notice"), (see Dkt. 181-1, Memo at 24; Dkt. 181-3, Settlement Agreement at § 2.8.1-2.8.2, 6.1, 6.2; Dkt. 185, Supplemental Friedman Decl., Exh. A ("Mail Notice") & Exh. B ("Email Notice")); and (2) a publication notice in People or another suitable magazine.  (See Dkt. 181-1, Memo at 24; Dkt. 181-3, Settlement Agreement at §§ 2.8.3 & 6.3; Dkt. 181-14, Jennifer M. Keough Declaration ("Keough Decl.") at 13).  Additionally, JND will establish a settlement website that will enable class members to access the claim form, relevant case documents, and a frequently asked questions page.  (See Dkt. 181-1, Settlement Agreement at § 6.4; Dkt. 181-14, Keough Decl. at ¶ 20; Dkt. 185, Exh. C ("Website Notice") & Exh. D ("Electronic Claim Form")). Through the website, class members will also be able to submit claim form or opt-out form.  (See Dkt. 181-3, Settlement Agreement at §§ 2.8.4 & 6.4; Dkt. 185, Exh. D, Electronic Claim Form & Exh. F, Opt-Out Form).  Finally, JND will establish and maintain a toll-free telephone line where class members can obtain information.  (See Dkt. 181-3, Settlement Agreement at § 6.5; Dkt. 181-14, Keough Decl. at ¶ 21).

The Mail Notice, which will include the URL address of the settlement website, (Dkt. 185, Exh. A, Mail Notice), will be sent via first-class U.S. mail to class members for whom a mailing address is available.[3]  (See Dkt. 64, Motion at 27; Dkt. 181-14, Keough Decl. at ¶ 14).  The Mail Notice describes the nature of the action and sets forth the definition of the class.[4]  (See Dkt. 185, Exh. A (Mail Notice)); see Fed. R. Civ. P. 23(c)(2)(B).  The Mail Notice also advises class

_____

[3] According to defendants, names and postal addresses are available for all potential class members, and email addresses are available for about 84,000 potential class members. (See Dkt. 181-14, Keough Decl. at ¶ 13).

[4] The Website Notice supplements the Mail Notice and provides additional details, including the release.  (See Dkt. 185, Exh. C, Website Notice); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). While the Website Notice explains that class members who object and wish to speak at the Final Fairness Hearing must file a notice of intent to appear, (see Dkt. 185, Exh. C, Website Notice at 8), it requires that "copies of the notice of intent to appear be sent to the attorneys for the Plaintiff and Settlement Class and to the attorneys for Defendants at the addresses provided above[.]" (Id.).  However, the court will order that such language be omitted from the Website Notice, as class members should only be required to file a notice of intent to appear with the court.  Once the notice of intent is filed with the court, the notice will automatically be sent to all parties in the action.

members that they may submit a claim directly to JND or submit one online at the settlement website. (See Dkt. 185, Exh. A, Mail Notice). It explains the terms of the settlement, including the settlement amount, and the distribution of that amount. (Id.). It includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendants. (See id.); see also Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi). Finally, the Notice provides information about the Final Fairness Hearing. (See id.).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members. Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and complies with the requirements of due process.

E.    Summary.

The court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys[.]" Manual for Complex Litigation § 21.632 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.    Plaintiffs' Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class **(Document No. 181)** is **granted** upon the terms and conditions set forth in this Order.

2.    The court preliminarily certifies the class, as defined in § 3.1 of the Settlement Agreement and Release ("Settlement Agreement") (Document No. 181-3, "Settlement Agreement") for the purposes of settlement.

3.    The court preliminarily appoints plaintiffs Saber Ahmed and John Monteleone as class representatives for settlement purposes.

4. The court preliminarily appoints Alexander H. Burke of Burke Law Offices, LLC; Beth E. Terrell of Terrell Marshall Law Group PLLC; Matthew R. Mendelsohn of Mazie Slater Katz & Freeman, LLC; Joshua B. Swigart of Hyde & Swigart; Todd M. Friedman and Adrian Bacon of The Law Offices of Todd M. Friedman, P.C.; and Abbas Kazerounian of Kazerouni Law Group, APC as class counsel for settlement purposes.

5. The court preliminarily finds that the terms of the Settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6. The court approves the form, substance, and requirements of the Mail Notice (Dkt. 185, Exh. A); Email Notice (id., Exh. B); Electronic Claim Form (id., Exh. D); Opt-Out Form (id., Exh. F); and the Website Notice (id., Exh. C), except that the sentence referenced in footnote 4 above shall be stricken. The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7. JND Legal Administration Company shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **August 5, 2019**.

8. Plaintiffs shall file a motion for an award of class representative incentive payments and attorney's fees and costs no later than **September 26, 2019,** and notice it for hearing for the date of the final approval hearing set forth below.

9. Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive awards; (b) exclude him or herself from the settlement; or (c) make a claim must file his or her objection to the settlement, request for exclusion, or submit a claim form no later than **November 4, 2019**, in accordance with the Notice.

10. Plaintiffs shall, no later than **November 18, 2019,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement. The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11. Defendants may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **November 25, 2019**.

12. Any class member who wishes to appear at the final approval (fairness) hearing, either

on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **December 5, 2019**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.  A final approval (fairness) hearing is hereby set for **December 12, 2019,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and service awards to the class representatives.

14.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 21st day of June, 2019.

/s/
Fernando M. Olguin
United States District Judge