

FILED
CLERK, U.S. DISTRICT COURT
12/30/2019
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SABER AHMED, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>HSBC BANK USA, et al.,<br><br>　　　　　Defendants. | Case No. ED CV 15-2057 FMO (SPx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

　　　　Having reviewed and considered all the briefing filed with respect to Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 200, "Motion"), and Plaintiffs' Motion for Attorneys' Fees, Costs and for Incentive Awards to the Class Representatives (Dkt. 195, "Fees Motion"), and the oral argument presented at the hearing on December 12, 2019, the court concludes as follows.

**BACKGROUND**

　　　　On October 6, 2015, Saber Ahmed ("Ahmed") filed this action on behalf of himself and all others similarly situated against HSBC Bank USA, National Association ("HSBC"), asserting claims for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (See Dkt. 1, Complaint). On March 15, 2017, Ahmed, joined by John Monteleone ("Monteleone") (collectively, "plaintiffs"), filed the operative First Amended Complaint (Dkt. 27, "FAC"), alleging that HSBC and PHH Mortgage Corporation ("PHH") (collectively, "defendants") negligently and willfully violated the TCPA by using an "automatic telephone dialing system" ("ATDS") within the

meaning of 47 U.S.C. § 227(a)(1) to call plaintiffs, and others similarly situated, on their cell phones. (See id. at ¶¶ 65-73).

After engaging in discovery, motion practice, and an all-day mediation session, the parties reached a settlement in July 2018. (See Dkt. 186, Court's Order of June 21, 2019 ("Preliminary Approval Order" or "PAO") at 2). The parties have defined the settlement class as "[a]ll persons within the United States to whom (a) Defendant HSBC or Defendant PHH Mortgage, (b) placed a call (c) to a cellular telephone (d) regarding a mortgage loan owned and/or serviced by, on behalf of and/or in the name of HSBC (e) through the use of any dialing system or an artificial or prerecorded voice (f) between October 6, 2011 and [January 18, 2019]." (Dkt. 181-3, Settlement Agreement and Release ("Settlement Agreement") at § 3.1; Dkt. 186, PAO at 2).

The relief available to the class will come from a $2,400,000 settlement fund, after deductions for attorney's fees and costs, the class representative service awards, and costs for the administration of the settlement. (See Dkt. 181-3, Settlement Agreement at §§ 2.35 & 4.2; Dkt. 186, PAO at 2). Subject to court approval, the settlement provides for up to $600,000 (or 25% of the gross settlement amount) in attorney's fees, and costs not to exceed $55,000. (See Dkt. 181-3, Settlement Agreement at § 15.1; PAO at 2). In addition, the settlement allows up to $5,000 in an incentive award for each of the two named plaintiffs. (See Dkt. 181-3, Settlement Agreement at § 15.2; Dkt. 186, PAO at 2).

Payment from the settlement fund will be paid on a pro rata basis to class members who submit timely claim forms. (See Dkt. 181-3, Settlement Agreement at §§ 2.5, 4.2.4, 6.1.3, 7.1-7.2; Dkt. 186, PAO at 2-3). The payment to each class member, (see 181-3, Settlement Agreement at §§ 2.2 & 2.11.5; Dkt. 186, PAO at 3), will be calculated by dividing the amount remaining in the fund by the total number of valid claims, after deducting all settlement costs, including attorney's fees, litigation costs, notice and administration expenses, and class representative incentive awards. (See 181-3, Settlement Agreement at §§ 4.2.4 & 4.2.5; Dkt. 186, PAO at 3). The settlement fund is non-reversionary and any checks that remain uncashed more than 180 days will be redistributed on a pro rata basis to the eligible settlement class members if, after administration, the redistribution is economically feasible. (See Dkt. 181-3, Settlement Agreement

at § 4.2.7). If redistribution is not economically feasible, the remaining amount will be distributed to the proposed cy pres beneficiary, Public Counsel. (See id. at § 4.2.7).

On June 21, 2019, the court granted preliminary approval of the settlement, appointed JND Legal Administration ("JND") as settlement administrator, and directed JND to provide notice to the class. (See Dkt. 186, PAO at 22-23). After the court issued its Preliminary Approval Order, JND implemented the notice program approved by the court. (See Dkt. 200-1, Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Memo") at 1-2, 5-6; Dkt. 200-5, Declaration of Jennifer M. Keough Regarding Notice Administration ("Keough Decl.") at ¶¶ 6-16 & Exhs. A-D; Dkt. 186, PAO at 20-22 (approving notice program); Dkt. 188, Court's Order of July 29, 2019 (approving modified mail notice)). Specifically, after checking and updating addresses via a National Change of Address search, JND sent notice to 161,325 class members via U.S. Mail, (see Dkt. 200-5, Keough Decl. at ¶ 8 & Exh. B (Mail Notice)), and provided email notice to 70,528 class members. (See id. at ¶ 6 & Exh. A (Email Notice)). JND also provided notice via publication in the August 5, 2019, issue of *People Magazine*. (See id. at ¶ 11 & Exh. C (Publication Notice)). As of November 18, 2019, JND had received 16,121 valid claim forms, eight valid requests for exclusion, and no objections. (See id. at ¶¶ 22, 26, 28; Dkt. 200-1, Memo at 7). Given the number of valid claims, each class member who submitted a claim form will receive approximately $92.39. (See Dkt. 200-5, Keough Decl. at ¶ 23; Dkt. 200-1, Memo at 8).

Plaintiffs now seek: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) incentive payments for plaintiffs. (See Dkt. 200, Motion; Dkt. 195, Fees Motion).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[1] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers

---

[1] All "Rule" references are to the Federal Rules of Civil Procedure.

for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "The settlement must stand or fall in its entirety." Officers for Justice, 688 F.2d at 630.

In order to approve a settlement in a class action, the court must conduct a two-step inquiry.[2] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard).

In determining whether a settlement is fair, adequate, and reasonable, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class

---

[2] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, defendants' counsel provided the CAFA Notice, (see Dkt. 202-1, Declaration of J. Matthew Thornton Regarding Notice [] Pursuant to 28 U.S.C. § 1715 at ¶¶ 6-11; Dkt. 202-2, Exh. 1; Dkt. 202-3, Exh. 2; Dkt. 202-4, Exh. 3), and confirmed at the final fairness hearing that there have been no objections to the settlement from the state and federal officials that received CAFA notice.

certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members."). District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Bluetooth, 654 F.3d at 947 (internal quotation and alteration marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. (internal quotation marks and citations omitted).

## DISCUSSION

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A. Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 186, PAO at 7-14, 22). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B. Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including

individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Dkt. 186, PAO at 20-22; Dkt. 188, Court's Order of July 29, 2019). As discussed above, the notice program was implemented by JND. (See Dkt. 200-5, Keough Decl. at ¶¶ 6-16 & Exhs. A-D). Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement.

C. Whether the Class Settlement is Fair, Adequate and Reasonable.

1. **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 975 (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

Here, in granting preliminary approval of the settlement, the court recognized the "risks of continued litigation [were] significant" and when "coupled with the costs and delay associated with continued litigation, the . . . benefits to the class" were within the range of reasonableness. (See Dkt. 186, PAO at 16-17). The settlement here affords class members monetary benefits in the face of various defenses to plaintiffs' claims and substantial expense and delay. (See id. at 16-17; Dkt. 200-1, Memo at 10-12). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds that this factor supports a finding that the settlement is fair, adequate, and

reasonable.

### 2. The Risk of Maintaining Class Action Status Through Trial.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 186, PAO at 7-14, 22). In deciding whether to certify the class for settlement purposes, the court determined that the requirements of Rule 23 have been met. (See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class."). Accordingly, this factor weighs in favor of approving the settlement.

### 3. The Amount Offered in Settlement.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the case. (See Dkt. 186, PAO at 16-17). Moreover, while the estimated individual class recovery was $60 at the time of preliminary approval, (see id. at 16), it now appears that, based on the number of claims submitted, each class member who submitted a claim form will receive approximately $92.39. (See Dkt. 200-5, Keough Decl. at ¶ 23; Dkt. 200-1, Memo at 8). Accordingly, this factor also weighs in favor of final approval.

### 4. The Extent of Discovery Completed and the Stage of Proceedings.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding

the case." Id. at 527 (internal quotation marks omitted). The court previously examined these factors at length, noting that the parties engaged in extensive discovery, (see Dkt. 186, PAO at 15), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id.), which enabled the parties to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id. at 16). In other words, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Nat'l Rural Telecomms., 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

### 5. **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted). Here, class counsel consider the settlement to be fair, reasonable, and adequate. (See Dkt. 200-1, Memo at 15; see also Dkt. 200-4, Declaration of Abbas Kazerounian in Support of Motion for Final Approval ("Kazerounian Decl.") at ¶¶ 7-8; Dkt. 200-2, Declaration of Todd M. Friedman in Support of Motion for Final Approval at ¶ 4; Dkt. 200-3, Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for Final Approval at ¶ 4). The court has previously noted that class counsel are adequate. (See Dkt. 186, PAO at 10-11). Thus, this factor also supports approval of the settlement.

### 6. **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL

1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

       7.    **The Reaction of Class Members to the Proposed Settlement**.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529. Here, the reaction of the class has been very positive. There were only eight requests for exclusion and no objections. (See Dkt. 200-5, Keogh Decl. at ¶¶ 26, 28; see, generally, Dkt. (no objections filed with the court)). The lack of objections and limited requests for exclusion support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt outs and no objections out of the 2,385 class members).

II.    ATTORNEY'S FEES, COSTS AND SERVICE AWARDS.

The Settlement Agreement provides that defendant will not oppose class counsel's request for an award of attorney's fees up to 25% of the gross settlement amount. (See Dkt. 181-3, Settlement Agreement at § 15.1). Class counsel now seek such an award, which amounts to $600,000. (See Dkt. 195-1, Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees, Costs and for Incentive Awards to the Class Representatives ("Fees Memo") at 1).

    A.    Attorney's Fee Award.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In general, courts have discretion to choose among two different methods for calculating a

9

reasonable attorney's fee award. See Bluetooth, 654 F.3d at 941. Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). This method is typically used when a common fund is created. See Bluetooth, 654 F.3d at 942.

Alternatively, under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See Hanlon, 150 F.3d at 1029. Once the lodestar has been determined, the "figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Id. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Id. at 942; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331 F.Appx. 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.") (internal quotation marks and emphasis omitted).

Under the circumstances here, the court is persuaded that the percentage-of-fund method is the most appropriate so as to achieve a reasonable result in this case. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorneys fees." Hanlon, 150 F.3d at 1029. Courts consider "all of the circumstances of the case[,]" including the following factors when determining the percentage to be applied in a given case: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DCD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list"). The

actual percentage will vary depending on the facts of each case, but in "most common fund cases, the award exceeds that benchmark." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (internal quotation marks omitted).

Here, having considered the above factors, the court finds no reason to depart from the 25 percent benchmark as requested by class counsel. As the court previously noted, the settlement amount is reasonable given the issue of consent and the risk "that the court would have found that the system used to call plaintiffs was not an ATDS within the meaning of the TCPA." (Dkt. 186, PAO at 16); see also Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"). Also, as discussed above, see supra at § I.C.1., and in the Court's Preliminary Approval Order, the risks of continued litigation were significant. See Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee). Finally, class counsel took this case on a contingent basis. (See Dkt. 195-1, Fees Memo at 9); Knight v. Red Door Salons, Inc., 2009 WL 248367, *6 (N.D. Cal. 2009) ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."). In short, consideration of the foregoing factors supports class counsel's request for attorney's fees in the amount of 25% of the settlement fund, or $600,000. The court, therefore, is satisfied that a lodestar "cross-check" is not required. See Craft v. City of San Bernardino, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.").

B.   Costs.

Class counsel seek $51,071.92 in litigation expenses. (See Dkt. 200-1, Memo at 4 & n. 4; Dkt. 195-1, Fees Memo at 16; Dkt. 195-2, Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for Attorneys' Fees [] at ¶ 27; Dkt. 195-3, Declaration of Alexander H. Burke in Support of Plaintiffs' Motion for Attorneys' Fees [] at ¶ 17; Dkt. 195-4, Declaration of Todd M. Friedman in Support of Plaintiffs' Motion for Attorneys' Fees [] at ¶ 16; Dkt. 195-5, Declaration of Abbas Kazerounian in Support of Plaintiffs' Motion for Attorneys' Fees [] ("Kazerounian Fees Decl.") at

¶ 58; Dkt. 195-6, Exh. A to Kazerounian Fees Decl.; Dkt. 200-4, Kazerounian Decl. at ¶¶ 11-12; Dkt. 195-7, Declaration of Matthew R. Mendelsohn in Support of Plaintiffs' Motion for Attorneys' Fees [] at ¶ 20; Dkt. 195-11, Declaration of Joshua B. Swigart in Support of Plaintiffs' Motion for Attorneys' Fees [] at ¶ 11). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $51,071.92 in costs.

C. <u>Class Representatives Service Awards</u>.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." <u>Staton</u>, 327 F.3d at 977; see <u>Wren</u>, 2011 WL 1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiffs request that the court grant each named plaintiff a service award in the amount of $5,000. (<u>See</u> Dkt. 195-1, Fees Memo at 17-18).

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the incentive awards at issue, applying the careful scrutiny required in this Circuit. (<u>See</u> Dkt. 186, PAO at 18-19); see also <u>Radcliffe v. Experian Info. Sols. Inc.</u>, 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $5,000 for each class representative was presumptively reasonable and did not create a conflict of interest between named plaintiffs and absent class members. (<u>See</u> Dkt. 186, PAO at 19). The court therefore concludes that the requested service payment is fair and reasonable, and is hereby approved.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement **(Document No. 200)** is **granted** as set forth herein.

2. The court hereby **grants final approval** to the parties' Settlement Agreement and Release ("Settlement Agreement") (Document No. 181-3). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and

informed negotiations, and treats all members of the class fairly. The parties shall perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiffs' Motion for Attorneys' Fees, Costs and for Incentive Awards to the Class Representatives **(Document No. 195)** is **granted** as set forth herein.

4. The following class is certified under Federal Rule of Civil Procedure 23(c) for settlement purposes: "All persons within the United States to whom (a) Defendant HSBC or Defendant PHH Mortgage, (b) placed a call (c) to a cellular telephone (d) regarding a mortgage loan owned and/or serviced by, on behalf of and/or in the name of HSBC (e) through the use of any dialing system or an artificial or prerecorded voice (f) between October 6, 2011 and [January 18, 2019]."

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiffs Saber Ahmed and John Monteleone shall each be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $600,000.00 in attorney's fees, and $51,071.92 in costs in accordance with the terms of the Settlement Agreement.

8. The Claims Administrator, JND, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

Dated this 30th day of December, 2019.

/s/<br>
Fernando M. Olguin<br>
United States District Judge